UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| F.L. ROBERTS & CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-CV-12062-MAP |
| | ) | |
| LAND-AIR EXPRESS OF NEW ENGLAND, LTD, et al. | ) ) | |
| | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT LAND-AIR EXPRESS OF NEW ENGLAND, LTD. AND MOTION TO STRIKE RESPONSE TO MOTION FOR DEFAULT JUDGMENT
(Dkt. Nos. 24, 37)

I. INTRODUCTION

In this matter, plaintiff F.L. Roberts & Company, Inc. ("Plaintiff") seeks recovery from the defendants Land-Air Express of New England, Ltd. ("LAE") and North East Freightways, Inc. ("NEF") for deliveries of petroleum products to a terminal in Springfield operated by LAE. Defendant William Spencer (Spencer") is alleged to be a personal guarantor for LAE's liabilities to Plaintiff. Before the court are the following motions by Plaintiff: (1) for assessment of damages and entry of a default judgment against LAE; and (2) to strike a response filed by Spencer to Plaintiff's motion for assessment of damages and entry of default arguing for a limit on the damages assessed against LAE. The motions were referred to me for a report and recommendation by presiding District Judge Michael A. Ponsor (Dkt. No. 24, 39). *See* 28 U.S.C. § 636(b)(1)(B). The court held a hearing on Plaintiff's motion for entry of a default judgment on June 29, 2017 and set a deadline for further submissions (Dkt. No. 34). Having reviewed those submissions, the court recommends that Plaintiff's motion to strike Spencer's

1

response to Plaintiff's motion for a default judgment be GRANTED. Plaintiff having demonstrated that the defendant LAE failed to appear or otherwise defend this suit, Plaintiff is entitled to a default judgment under Federal Rule of Civil Procedure 55(b)(2). For the reasons set forth below, the undersigned recommends that, if Plaintiff elects to proceed with its motion for entry of default judgment enter against LAE at this time, that judgment enter in the amount of **$82,556.76**, inclusive of costs and attorney's fees and exclusive of interest (to which Plaintiff is entitled and which would have to be calculated through the date of any judgment that enters). As explained below, this recommendation is not intended to preclude Plaintiff from seeking additional damages, either by postponing its request for entry of a default judgment against LAE or by a subsequent motion to amend any default judgment entered at this time.

II. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed its complaint in the Superior Court Department of the Trial Court of the Commonwealth, Hampden County, on August 25, 2016. All of the defendants were timely served (Dkt. No. 13 at 3). On October 14, 2016, NEF removed the case to this court based on diversity jurisdiction (Dkt. No. 1). Spencer filed an answer while the case was pending in state court (*id.*). NEF filed its answer following removal (Dkt. No. 9). LAE has not answered or otherwise responded to the complaint. The clerk entered default as to LAE on April 10, 2017 (Dkt. No. 23).

In view of LAE's failure to appear, the facts alleged in the complaint as to LAE are taken to be true. *See Ortiz-Gonzalez v. Fonovisa,* 277 F.3d 59, 62-63 (1st Cir. 2002). According to the complaint, on or around August 15, 2012, LAE entered into a credit application and agreement with Plaintiff for the delivery of petroleum products to LAE. The agreement provided that, if LAE failed to meet its obligation of full and prompt payment to Plaintiff and the account was

2

turned over to an attorney for collection (as it has been), LAE would pay interest on its outstanding debt at 18% per annum as well as reasonable attorney's fees and/or the costs of collection (Dkt. No. 13 at 2, ¶¶ 5-6). Spencer personally guaranteed LAE's obligations to Plaintiff (*id.*, ¶ 6). In December 2015, the Federal Motor Carrier Safety Administration shut down LAE's operations (*id.* at 3, ¶ 9). As of June 9, 2016, LAE owed a principal balance of $76,009.36 to Plaintiff (*id.*, ¶ 8).

In January 2016, NEF represented to Plaintiff that it would be acquiring a substantial, controlling ownership interest in LAE and was taking over the management of LAE (*id.*, ¶ 9). NEF represented that, under NEF's management, LAE would pay its outstanding balance to Plaintiff and would remain current in the payment of new invoices. On the strength of this assurance, Plaintiff resumed delivery of petroleum products to the LAE terminal on Rocus Street in Springfield (*id.*, ¶ 10). Neither NEF nor LAE paid the outstanding balance owed by LAE to Plaintiff, nor did LAE (or NEF) remain current on the payment of new invoices. The complaint alleges an additional balance of $65,422.81 owing for the period of time when NEF was providing all management and control of LAE (*id.* at ¶ 11). Plaintiff alleges, on information and belief, that LAE continues to operate the same business out of the same terminal with no apparent disruption of its business.

By its motion, Plaintiff seeks a default judgment in the principal amount of $141,432.17 against LAE (*id.* at ¶¶ 11-12). By an affidavit signed by Frank Roberts, the Senior Vice President of Plaintiff, based on the terms of the agreement between LAE and Plaintiff, Plaintiff further requests interest in the amount of $21,900.63 on the principal, and legal fees and costs totaling $8,904.20 (Dkt. No. 37-1 at 1-3, ¶¶ 1, 9).

    III.    D<span style="font-size:smaller">ISCUSSION</span>

A. <u>Motion to Strike</u>

On May 17, 2017, defendant Spencer filed a response to Plaintiff's motion for assessment of damages and a default judgment in which he argued that the amount of any default judgment entered against LAE should be limited to $30,000 and that no attorney's fees or costs should be assessed (Dkt. No. 26). Spencer is self-represented and, so far as appears from the record, is not an attorney. Plaintiff moves to strike the response filed by Spencer on the grounds that Spencer cannot make filings on behalf of LAE in this action. The court agrees and recommends that Spencer's response be stricken or disregarded by the presiding District Judge. It is well-settled that an individual who is not an attorney is not permitted to make filings on behalf of another person or on behalf of an entity. *See* 28 U.S.C. § 1654; Local Rule 83.5.5 (a corporation may not appear *pro se* in this court; an individual officer, director, partner, member, trustee, administrator, or executor may not appear on behalf of an entity; the court "may strike any pleading filed on behalf of any entity that purports to appear *pro se*"); *see also, e.g., Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.*, 209 F.3d 18, 22 (1st Cir. 2000) (citing *In re Las Colinas Dev. Corp.*, 585 F.2d 7, 13 (1st Cir. 1978) ("a non-lawyer may not represent a corporation in ongoing proceedings").

B. <u>Damages</u>

a. <u>Standard of Review</u>

While a court should accept as true the well-pleaded factual allegations in the complaint when considering a motion for entry of default judgment, the court "need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages." *Virgin Records Am., Inc. v. Bagan*, Civ. No. 08-4694 (WHW), 2009 WL 2170153, at *2 (D.N.J. July 21, 2009) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). A court is

required to conduct its own inquiry to ascertain the amount of damages with reasonable certainty. *See id.* (quoting *Int'l Assoc. of Heat & Frost Insulators v. S. Jersey Insulation Servs.*, No. 05-3143, 2007 WL 276137, at *1 (D.N.J. Jan. 26, 2007)).

      b. <u>Damages</u>

Accepting as true the well-pleaded allegations in the complaint, and taking into account the terms of the agreement submitted as part of Docket Entry 37-1, LAE has failed to pay for petroleum products delivered to it by Plaintiff. Plaintiff is entitled, at a minimum, to a judgment against LAE in a principal amount of $76,009.36, plus interest at the contractual rate of 18% per annum, costs, and reasonable attorney's fees and costs. I calculate that Plaintiff is entitled to an award of fees and costs totaling $6,557.40.[1] For the reasons explained herein I have left open at this time the amount of interest due on a default judgment in the principal amount of $76,009.36.

The more difficult question is whether, based on the allegations in the complaint, which are repeated but not amplified, in Mr. Roberts' affidavit, Plaintiff is entitled to a default judgment including the additional $65,422.81 (with interest, costs and attorney's fees) incurred after NEF allegedly told Plaintiff that it was acquiring a substantial, controlling interest in LAE, was taking over its management, and would ensure that LAE's liabilities to Plaintiff were paid

---

[1] In recommending as assessment of costs, I have not included the $571.80 entry on May 17, 2017 for copying documents responsive to Spencer's document production requests. In recommending as assessment of attorney's fees, I have excluded the entries on October 7, 19, and 25, and November 14, 16, and 21, 2017, as these entries appear to have a minimal, if any, relationship to Plaintiff's claims against LAE. The recommendation for attorney's fees totals $6,417.50. The recommended award of costs is $439.90. I have not attempted to calculate interest because the plaintiff has requested an amount of interest that presupposes a default judgment of $141,432.17, and has not supplied the court with the date or dates from which interest should run. Nor will this Report and Recommendation result in the immediate entry of a judgment, which would constitute the end point for pre-judgment interest. I calculate that interest at 18% per annum on $76,009.36 would run at $13, 681.68 annually; $304.04 per month; and $37.48 per day.

5

(e.g., Dkt. No. 37-1 at 2). In the court's view, Plaintiff's allegations and evidence (Mr. Roberts' affidavit) are not sufficient to establish by a preponderance of the evidence the nature of business relationship, if any, between NEF and LAE in and after January 2016, or the identity of the business entity to which Plaintiff was delivering products in and after January 2016.[2] Thus, Plaintiff has not submitted sufficient evidence to support a finding that LAE was financially responsible for Plaintiff's delivery of petroleum products to the entity doing business at the Roscoe Street terminal in and after January 2016.

The court's reservations on this point are premised on Massachusetts law governing corporate liability for debts of predecessor and successor corporations. Explicitly and by implication, Plaintiff has represented that it believes that NEF may have become a majority owner of, or, possibly, a successor corporation to, LAE in January 2016. By its complaint, Plaintiff seeks to hold NEF liable on, among other theories, breach of contract, for LAE's purchases of petroleum products from Plaintiff before January 2016, as well as further purchases in and after January 2016 (Dkt. No. 13 at 15, ¶ 28 ("As of July 30, 2016, North East owes F.L. Roberts the sum of $141,432.17 plus further interest, fees and other charges allowable under the Credit Application and Agreement.")).

Under Massachusetts law,

> "the purchaser of the assets of another corporation does not assume the debts and liabilities of the transferor. The traditional rule is subject to four generally recognized exceptions: (1) the purchasing corporation expressly or impliedly agrees to assume the selling corporation's liabilities; (2) the transaction is a merger of the two entities; (3) the purchaser is a mere continuation of the seller corporation; [or] (4) the transaction is a fraudulent attempt to evade the seller's liabilities.

---

[2] Plaintiff should not be faulted for this deficiency in proof at this stage of the case. Presumably, these are questions that will be clarified in discovery.

*Amer. Paper Recycling Corp. v. IHC Corp.*, 707 F. Supp. 2d 114, 119 (D. Mass. 2010) (quoting *Devine & Devine Food Brokers, Inc. v. Wampler Foods, Inc.*, 313 F.3d 616, 618 (1st Cir. 2002)); *see also Cargill, Inc. v. Beaver Coal & Oil Co.*, 676 N.E.2d 815, 818 (Mass. (1997) (citing *Guzman v. MRMI Elgin*, 567 N.E.2d 929, 931 (Mass. 1991)). By alleging that NEF purchased a controlling interest in LAE, and agreed to assume and is liable for LAE's prior debt to Plaintiff, Plaintiff appears to be alleging that NEF was a successor business entity to LAE which expressly agreed to assume LAE's liabilities (or, possibly, that one of the other previously mentioned exceptions applies).[3] Whether this is so appears to be an important issue in this case.

Because, on the evidence presented in support of the entry of default judgment against LAE, the court cannot ascertain with "reasonable certainty" that LAE, as opposed to NEF, should be held liable for Plaintiff's deliveries of petroleum products to the Rocus Street terminal in and after January 2016, the court recommends that any default judgment entered against LAE at this time be limited to **$82,556.76**, inclusive of costs and attorney's fees, and exclusive of interest, which would need to be calculated based on information to be provided by Plaintiff, and should run through the date of any judgment.

This recommendation is not intended to preclude Plaintiff from seeking entry of a default judgment against LAE for a principal amount of $141,432.17, plus interest, costs and attorneys' fees, if the evidence supports entry of such a judgment. The most straightforward, and the best, way to ensure that this option is available would be for Plaintiff to defer its request for entry of a default judgment until after the close of non-expert discovery, or some other point at which it believes it has adequate evidence to support entry of a default judgment against LAE for the full

---

[3] Indeed, the parties recently requested an extension of the deadline for completion of non-expert discovery in this case based on the serious illness of NEF's president, who is represented to be a central witness because he was involved in NEF's purchase of LAE's assets (Dkt. No. 35).

7

amount of the unpaid invoices. *See Trinidad v. City of Boston*, Civil Action No. 07-11679-DPW, 2011 WL 915338, at *2 (D. Mass. Mar. 15, 2011) (at the plaintiff's request, the district judge agreed to defer consideration of damages against a defaulting party until dispositive motions had been filed by the responding defendant).

If Plaintiff elects to pursue entry of a default judgment against LAE at this point, and the court accepts the recommendation that the amount of any such judgment should be limited for the reasons set out herein, it appears that the court has authority to entertain a later motion by Plaintiff for entry of an amended default judgment based on newly discovered evidence pursuant to Federal Rules of Civil Procedure 55(c) and 60(b), particularly where any such motion would be brought by the non-defaulting party based on evidence that it did not possess when it filed the motion for entry of default judgment and assessment of damages that is presently before the court. *Cf. Trinidad*, 2011 WL 915338, at *4 (relying on Fed. R. Civ. P. 59(e) as a basis to grant a motion by the non-defaulting party to amend a default judgment that had been limited to nominal damages).[4]

IV. CONCLUSION

For the foregoing reasons, if Plaintiff elects to seek entry of a default judgment against LAE at this time, I recommend that such a judgment enter in the amount of **$82,556.76**, inclusive of attorney's fees, and costs, to which interest calculated at the contractual rate of 18% per annum should be added.[5]

---

[4] Because a motion to alter or amend a judgment pursuant to Fed. R. Civ. P. 55(e) must be filed no later than 28 days after entry of the judgment, Rule 55(e) is unlikely to be a proper vehicle for a motion to amend a default judgment entered at this time in this case. Nonetheless, the reasoning that dictated a relatively generous standard of review for the motion to amend the judgment in the *Trinidad* case based on the fact that the motion was brought by the non-defaulting party should apply in this case as well.

[5] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection

Dated:  October 3, 2017                                          /s/ Katherine A. Robertson
                                                                KATHERINE A. ROBERTSON
                                                                UNITED STATES MAGISTRATE JUDGE

---

with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.